UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
TORKIEH SADAGHEH,                                :

                Petitioner,                    :        12 Civ. 184 (LTS) (GWG)

   -v.-                                          :        <u>REPORT</u>
                                             <u>AND RECOMMENDATION</u>
PHILIP HEATH, et. al.                            :

             Respondents.                     :

-------------------------------------------------------------X
**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

      Torkieh Sadagheh, currently an inmate at the Sing Sing Correctional Facility in Ossining,

New York, has brought this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

On August 20, 2009, Sadagheh pled guilty in New York County Supreme Court to one count of

rape in the first degree and one count of attempted rape in the first degree.  On October 13, 2009,

he was sentenced to a determinate term of 15 years imprisonment and 10 years of post-release

supervision.  In this petition, he asserts that he received ineffective assistance of counsel because

his attorney failed to advise him of the term of post-release supervision prior to pleading guilty

and failed to advise him of his "right" to withdraw his guilty plea once the post-release

supervision term was imposed.  For the following reasons, Sadagheh's petition should be denied.

I.      <u>BACKGROUND</u>

      A.     <u>Plea Hearing</u>

      In February 2008, Sadagheh was indicted on multiple charges, including rape in the first

degree in violation of N.Y. Penal Law § 130.35(1), and attempted rape in the first degree in

violation of N.Y. Penal Law §§ 110.00, 130.35(1).  <u>See</u> Indictment, <u>People v. Sadagheh</u>,

723/2008 (N.Y. Sup. Ct. Feb. 2008) (annexed as Ex. A to Declaration in Opposition to the

Petition for a Writ of Habeas Corpus, filed July 9, 2012 (Docket # 12) ("Lyons Decl.")).  Israel

Fried represented Sadagheh in the criminal proceedings until the sentencing.  See Transcript of

Plea Allocution, People v. Sadagheh, 723/2008 (N.Y. Sup. Ct. Aug. 20, 2009) (annexed as Ex. B

to Lyons Decl.) ("Tr."), 1.  On August 20, 2009, while jury selection for Sadagheh's criminal

trial was underway, Fried informed the presiding judge, Justice Thomas Farber, that his client

had expressed interest in pleading guilty.  Tr. 2:15–3:5.  Fried stated that he had informed his

client that the District Attorney's Office had extended a plea offer in which Sadagheh would

serve a 12-year determinate prison sentence in exchange for a guilty plea.  Tr. 3:21–4:10.  The

Assistant District Attorney stated that the People's recommendation at that point in time was for

a 15-year prison sentence.  Tr. 4:18–21.  Justice Farber made clear that if Sadagheh went

forward with a plea, he would plead guilty to one count of rape and one count of attempted rape,

and the prison sentence would be limited "to a maximum of 15 years."  Tr. 6:8–16.

  Fried then had a conversation with Sadagheh to explain the conditions of a guilty plea

because he "apparently [did not] understand what was . . . said in court."  Tr. 6:17–21.  Justice

Farber made clear that he would consider sentencing Sadagheh to between 12 and 15 years in

prison if he pled guilty, but that the sentence was "more likely to be closer to 15" and Sadagheh

"should assume that the sentence is 15 years, if he is going to plead guilty."  Tr. 6:23–7:4.  In

response, Sadagheh stated that he was "willing to take responsibility for [his] action," Tr. 7:5–6,

and that he was "willing to plead guilty," Tr. 8:13–14.  The judge and the defendant then

engaged in the following colloquy:

> THE COURT: Sir, what you're telling me is that you wish to plead guilty to the
> charges in this case, which is one count of Rape and one count of Attempted
> Rape, with the understanding that there is no promise as to sentence, except for
> my promise that the maximum sentence I will give you [is] the original pretrial
> offer of 15 years.  Do you understand what that means?
>
> THE DEFENDANT: No.

2

THE COURT: It means I can give you any sentence that is appropriate.  It will be no less than the sentence the DA offered you, which is 12 years, and no more than 15 years.  Do you wish to plead guilty under those circumstances?

(Pause.)

**********

(Defendant nods.)

THE COURT: Is that a "yes"?

THE DEFENDANT: Yes.

Tr. 8:15–9:10.

Justice Farber then summarized the allegations contained in the indictment.  Tr. 9:21–11:7.  Sadagheh acknowledged that in the early morning hours of February 17, 2008, he "picked up a woman [with his cab] outside a Scores club in Manhattan . . . and . . . attempted to have intercourse with her by forcible compulsion against her will . . . .  [But he] struggled with this woman and she, eventually, escaped and got out of the cab."  Tr. 10:4–18.  He also acknowledged that later that same morning, he "picked up four young women, together, and that when . . . three of [the women] got out of the cab, leaving one of them alone in that cab . . . . [he] had sex with her by forcible compulsion, against her will . . . ."  Tr. 10:19–11:7.

Justice Farber then explained that if Sadagheh did not plead guilty he would be entitled to a trial at which he was "presumed to be innocent," Tr. 11:14–15, and that the District Attorney would "have to prove to 12 jurors" his guilt "beyond a reasonable doubt . . . ," Tr.12:2–6.  Justice Farber then stated that "[t]here's no reason to plead guilty unless you are, in fact, guilty," to which Sadagheh responded "[r]ight."  Tr. 12:7–9.  Sadagheh then acknowledged that he had "fully discussed this matter with [his] attorney," and that nobody had forced him to plead guilty.  Tr. 12:10–24.  Justice Farber cautioned Sadagheh that by pleading guilty he "forever give[s] up

3

[his] right to a trial on this case," and that he could not "come in here on the date [of sentencing], or any other time, ever, and say, [']I made a mistake[;] I didn't understand[;] I really wasn't guilty[;] and I want to go to trial.[']"  Tr. 13:11–18.  After some further colloquy, Sadagheh indicated that he still wished to plead guilty.  Tr. 15:4.

Justice Farber further explained the rights that Sadagheh would be forfeiting as a result of a guilty plea, including the right for a jury to determine guilt or innocence by a unanimous verdict, Tr. 15:10–16; the right to cross-examine and confront witnesses at trial, Tr. 15:18–17:21; "the right not to testify"; and "the right to remain silent and do nothing because the [P]eople have to prove you guilty," Tr. 18:4–15.  Sadagheh acknowledged that he understood each of the rights that he was relinquishing by pleading guilty.  Tr. 15:17, 17:3, 18:3, 18:10, 18:16.  The Court also informed Sadagheh that as a result of the convictions for rape and attempted rape, he would be required to register as a sex offender, and that upon his release from prison, there would be a hearing to determine his sex offender level for registration purposes. Tr.19:1–11.  Then, after a conversation off the record, counsel stated that Sadagheh was not a citizen but rather was in the United States on a green card.  Tr. 19:13–18.  Sadagheh acknowledged that he had discussed the immigration consequences of his guilty plea with his attorney and that he was aware of the possibility of being removed as a result of his convictions. Tr. 19:19–20:6.

Justice Farber then asked Sadagheh "one last time" whether it was his "decision to plead guilty," to which he stated "[y]es."  Tr. 20:6–12.  Sadagheh admitted that he was pleading guilty because he was in fact guilty.  Tr. 20:13–20.  The judge stated "[e]nter the plea" and, in response, the court clerk formally asked Sadagheh whether he wished to plead guilty.  Tr. 21:3–10.  He responded "[y]es."  Tr. 21:11.

After a brief discussion concerning the schedule for the sentencing hearing, Tr.

21:22–22:13, the following colloquy regarding post-release supervision occurred:

> COURT CLERK: Post-release supervision, 5 years, Judge?

> THE COURT: Right, we didn't discuss post-release supervision?

> MS. LYNN: Thank you.

> THE COURT: What is the post-release supervision?  It could be 10 years, right?

> MR. McCONNELL: I think it can be up to 15, on a sex crime.

> THE COURT: Hang on for a second, we didn't discuss this.  It could be up to 20 years, actually, I think.  Minimum of 5 years, maximum of 20 years.  I will limit the post-release supervision to 10 years, but I'm going to keep it open, other than that, okay?

> (Pause.)

> **********

> THE COURT: This is what we are talking about, there is an automatic mandatory period of post-release supervision after . . . you are released from prison, where you will be under what is, essentially parole supervision, and you have to stay out of trouble during that period.  The law states that it can be anywhere from 5 to 20 years; however, I will limit it to 10 years upon your sentence.

> MR. FRIED: I have explained it to my client.  The issue may be moot, depending on INS and what happens with the immigration status.

> THE COURT: It may be, but in this case there is a mandatory post-release supervision.  It can be limited to 10 years, or rather, I will limit it up to 10 years in this case.  Do you under that, sir?  And it must be [a] minimum of 5 years, but it will be anywhere from 5 to 10 years, when I impose sentence, and it will be up to me.

> THE DEFENDANT: I understand.

> THE COURT: That is acceptable?

> MR. FRIED: Yes, your Honor, that is acceptable.

> THE COURT: That is acceptable?

5

THE DEFENDANT: Yes, acceptable.

Tr. 22:14 – 24:7.

B.    <u>Motions to Withdraw the Guilty Plea</u>

More than a month later, on September 30, 2009, Sadagheh filed a <u>pro</u> <u>se</u> motion to withdraw his guilty plea. <u>See</u> Notice of Motion Withdrawal [sic] of Plea CPL 220.60, <u>People v. Sadagheh</u>, 723/2008 (N.Y. Sup. Ct. Sept. 30, 2009) (annexed as part of Ex. C to Lyons Decl.). In an affidavit, he swore that:

> he was not fully aware of the circumstances involved when he made such guilty plea and that hereto even though he may have [been] given instruction by the Court as to certain elements of his legal rights, such instructions were not fully understood. The plea was taken without knowing the full consequences of the plea.

Affidavit of Torkieh Sadagheh, <u>People v. Sadagheh</u>, 723/2008 (N.Y. Sup. Ct. Sept. 30, 2009) (annexed as part of Ex. C to Lyons Decl.), ¶ 3. He claimed to have pled "guilty for reasons which are outside of the record of the Court proceedings, and . . . that he was unaware of the facts that [constituted] a good meritorious defense to the prosecution." <u>Id.</u> ¶ 4. He claimed to be innocent. <u>Id.</u> ¶ 5. In an unlabeled attachment to the motion, he stated: "In the middle of selecting the Jury my private attorney Mr. Freed [sic] and the District Attorney forced me to plead guilty. It was an involuntary plea. I did not agree to any cop out. I would like to recant my plea and take this matter to Trial." Ex. C to Lyons Decl.

On October 5, 2009, a new attorney, Wayne C. Bodden, filed a separate motion to withdraw the plea on Sadagheh's behalf. Notice of Motion to Withdraw Plea, <u>People v. Sadagheh</u>, 723/2008 (N.Y. Sup. Ct. Oct. 5, 2009) (annexed as Ex. D to Lyons Decl.) ("Oct. 5 Notice"); Memorandum in Support of Motion to Withdraw Gulty [sic] Plea, <u>People v. Sadagheh</u>, 723/2008 (N.Y. Sup. Ct. Oct. 5, 2009) (annexed as Ex. E to Lyons Decl.) ("Oct. 5 Mem.").

Specifically, the motion asserted that Sadagheh should be able to withdraw his plea because "he was unaware at the time of the plea that he had a meritorious defense to the prosecution, to wit: the defendant was only engaged in consensual [sic] acts"; "he was under duress at the time of the plea being entered because his family was threatened with arrest while present in the Court to support him on the day of the plea"; and "counsel did not effectively represent him because as the jury selection was proceeding counsel threatened him with 40 years of jail which differed from the 5–7 year sentences that had been previously discussed."  Oct. 5 Notice ¶¶ 4–6.  The motion contended that the transcript of the plea allocution did not accurately reflect counsel's ineffective assistance, as it excluded "numerous long pauses and threats being made to [Sadagheh] by his attorney . . . ."  Id. ¶ 7.  Finally, the motion claimed that, at the time of the plea, Sadagheh "was unstable . . . because he was denied a speedy trial and harassed by the prosecutors to take a plea," and "was not of the proper mindset and would have answered yes to anything posed by the Court."  Id. ¶¶ 8–9.  The memorandum of law submitted by Bodden further argued that the court should have found the plea to be involuntary based on Sadagheh's background, the seriousness of the charges, the logic behind the plea, previous counsel's inexperience, and the speed of the procedure.  Oct. 5 Mem. at 1.

      C.    <u>Sentencing Hearing</u>

    On the morning of October 13, 2009, Sadagheh appeared before Justice Farber for sentencing.  <u>See</u> Transcript of Sentencing, <u>People v. Sadagheh</u>, 723/2008 (N.Y. Sup. Ct. Oct. 13, 2009) (annexed as Ex. F to Lyons Decl.) ("Sent. Tr.").  Fried appeared on Sadagheh's behalf.  Sent. Tr. 2:5–7.  Sadagheh, however, informed Justice Farber that he had retained Bodden to represent him going forward.  Sent. Tr. 2:8–3:5.  Fried then informed Justice Farber that Sadagheh had threatened him during two separate phone calls the night before.  Sent. Tr.

6:10–20.  Justice Farber relieved Fried from further representation of Sadagheh.  Sent. Tr. 7:3–10.

At a later session on the same day, Bodden appeared on Sadagheh's behalf.  Sent. Tr. 9:7–8.  With respect to the motions to withdraw the plea, Bodden argued that much of the pertinent evidence was unavailable on the record.  Sent. Tr. 10:20–11:3.  Justice Farber, however, viewed the motions as "dilatory" and made "for this defendant to evade responsibility for his actions."  Sent. Tr. 16:15–23.  The judge noted that Sadagheh was warned numerous times during the allocution that he would be unable to withdraw his plea once it was entered.  Sent. Tr. 21:10–23:9.  With respect to alleged threats of arrest to Sadagheh's family members, Justice Farber stated that they were properly warned not to commit jury tampering after they communicated with prospective jurors in contravention of the court's instruction.  Sent. Tr. 24:2–6.  Finally, the judge commented that Fried "aggressively represented his client throughout the entire trial and negotiations with the District Attorney . . . . [a]nd there is nothing in this record that would suggest that he was ineffective, in any possible way."  Sent. Tr. 24:7–14.  The motions to withdraw the guilty plea were denied.  Sent. Tr. 24:15.

Prior to being sentenced, Sadagheh stated he "wasn't being assisted right by [his] private attorneys, and [that he] really felt threat[ened] when [he] pleaded guilty."  Sent. Tr. 30:1–3.  Justice Farber sentenced Sadagheh to two concurrent 15-year prison sentences followed by 10 years of post-release supervision, as well as surcharges and registration as a sex offender.  Sent. Tr. 36:5–37:15.  During the course of the sentencing proceeding, Sadagheh repeatedly called Justice Farber "a Hitler" and the judge sentenced him to an additional 30 days in prison and a $1,000 fine for contempt of court.  Sent. Tr. 36:15–38:17.

8

D.     Motion to Vacate Judgment Pursuant to N.Y. Crim. Proc. § 440.10

On August 5, 2010, Sadagheh filed a pro se motion in New York County Supreme Court to vacate the judgment pursuant to N.Y. Crim. Proc. § 440.10. See Notice of Motion to Vacate the Judgment Pursuant to C.P.L. § 440.10, People v. Sadagheh, 723/2008 (N.Y. Sup. Ct. Aug. 5, 2010) (annexed as part of Ex. G to Lyons Decl.); Affidavit in Support of Motion to Vacate the Judgment Pursuant to C.P.L. § 440.10, People v. Sadagheh, 723/2008 (N.Y. Sup. Ct. Aug. 5, 2010) (annexed as part of Ex. G to Lyons Decl.) ("Aug. 5 Aff."); Memorandum of Law, People v. Sadagheh, 723/2008 (N.Y. Sup. Ct. Aug. 5, 2010) (annexed as part of Ex. G to Lyons Decl.) ("Aug. 5 Mem."). In this motion, Sadagheh claimed for the first time that he "was never informed by his attorney, the Court nor [sic] the prosecutor that as a result of pleading guilty he would be exposed to any period of Post-Release Supervision" prior to entering his plea. Aug. 5 Aff. ¶ 6. Sadagheh argued that his rights under the Federal and New York State Constitution were violated because his counsel was ineffective by failing to properly inform him of the full consequences of his plea. See Aug. 5 Mem. at 7–9. He also claimed that his plea was involuntary because he learned of the post-release supervision only after entering a plea. Id. at 8. He contended that he "would not have pleaded guilty" had he been aware of the period of post-release supervision. Id. at 11. This was the first time he had made such an argument.

On August 27, 2010, the court denied the motion to vacate, stating that it was "entirely without merit." Order, People v. Sadagheh, 723/2008 (N.Y. Sup. Ct. Aug. 27, 2010) (annexed as Ex. I to Lyons Decl.) ("Aug. 27 Order"). The court reasoned that Sadagheh "was represented by counsel and informed of post release supervision during the plea process," and was thus "sentenced accordingly." Id.

9

E.      Appeal of Motion to Vacate

Sadagheh sought leave to appeal the denial of the motion to the Appellate Division, First

Department on September 16, 2010, arguing the same substantive grounds as in the motion to

vacate.  See Notice of Application to Justice of Appellate Division Granting Leave to Appeal to

Appellate Division C.P.L. § 460.15, People v. Sadagheh, 723/2008 (1st Dep't Sept. 16, 2010)

(annexed as part of Ex. J to Lyons Decl.) ("Leave to Appeal"); Affidavit in Support of

Application to Justice of Appellate Division for Certificate Granting Permission to Appeal to

Appellate Division, People v. Sadagheh, 723/2008 (1st Dep't Sept. 16, 2010) (annexed as part of

Ex. J to Lyons Decl.) ("Sept. 10 Aff.").  On December 14, 2010, the Appellate Division denied

leave to appeal.  See Certificate Denying Leave, People v. Sadagheh, 723/2008 (1st Dep't Dec.

14, 2010) (annexed as Ex. M to Lyons Decl.) ("Certificate Denying Leave").

F.      Direct Appeal

Sadagheh also filed a pro se appeal of his conviction, the date of which does not appear

in the record, and on October 5, 2010, the Appellate Division denied, without prejudice,

Sadagheh's motion for poor person's relief, see Order, People v. Sadagheh, 723/2008 (1st Dep't

Oct. 5, 2010) (annexed as Ex. N to Lyons Decl.).  By letter dated October 22, 2010, Sadagheh

renewed his application to proceed as a poor person.  Letter from Torkieh Sadagheh to Chief

Clerk, Appellate Division, First Department, dated Oct. 22, 2010 (annexed as Ex. O to Lyons

Decl.).  On November 24, 2010, the Appellate Division received Sadagheh's pro se brief in

support of his appeal, which argued that as a result of the court's, the prosecutor's, and counsel's

failure to inform him of the post-release supervision prior to entering a plea, he was denied due

process and effective assistance of counsel in violation of the federal and New York State

constitutions.  Brief for Defendant-Appellant, People v. Sadagheh, 723/2008 (1st Dep't Nov. 10,

10

2010) (annexed as Ex. P to Lyons Decl.).  On May 29, 2012, the Appellate Division granted

Sadagheh leave to proceed pro se and his "brief submitted with moving papers [was] deemed

filed for the September 2012 Term."  People v. Sadagheh, 2012 WL 1914022, at *1 (1st Dep't

May 29, 2012).

        However, on June 29, 2012, through his attorney, Sadagheh filed a motion to withdraw

his direct appeal and entered into a stipulation with the District Attorney to dismiss the appeal

with prejudice.  See Motion to Withdraw, People v. Sadagheh, 723/2008 (1st Dep't June 29,

2012) (annexed as part of Ex. U to Lyons Decl.); Stipulation, People v. Sadagheh, 723/2008 (1st

Dep't June 29, 2012) (annexed as part of Ex. U to Lyons Decl.).  The Appellate Division

dismissed the appeal "in accordance with the . . . stipulation" on August 21, 2012.  See Order,

People v. Sadagheh, 723/2008 (1st Dep't Aug. 21, 2012) (annexed as Ex. V to Supplemental

Declaration in Opposition to the Petition for a Writ of Habeas Corpus, filed Sept. 21, 2012

(Docket # 15)).

        G.      Petition for Writ of Habeas Corpus

        On January 10, 2012, Sadagheh filed the instant petition seeking a writ of habeas corpus

pursuant to 28 U.S.C. § 2254.  See Petition Under 28 U.S.C. §2254 for a Writ of Habeas Corpus

by a Person in State Custody, filed Jan. 10, 2012 (Docket # 1) ("Pet.").  He argues that he was

denied effective assistance of counsel because his attorney failed (1) "to fully inform [him] of

the full and complete consequences of a guilty plea" and (2) to fully inform him of "his right to

withdraw his guilty plea."  Id. ¶¶ 22–23.  Specifically, he argues that counsel neglected to inform

him about the mandatory period of post-release supervision prior to entering his guilty plea or

that he could withdraw his plea after learning of the post-release supervision.  See Memorandum

of Law in Support of Petition Under 28 U.S.C. §2254 for a Writ of Habeas Corpus by a Person

11

in State Custody, filed Jan. 10, 2012 (Docket # 1) ("Pet. Mem."), at 4.  The respondents

submitted papers in opposition to Sadagheh's petition.  Answer in Opposition to the Petition for

Writ of Habeas Corpus, filed July 9, 2012 (Docket # 10); Memorandum of Law in Opposition to

the Petition for a Writ of Habeas Corpus, filed July 9, 2012 (Docket # 11) ("Resp. Mem.");

Lyons Decl.  Sadagheh submitted a reply brief.  Reply Memorandum of Law in Support of

Petition for a Writ of Habeas Corpus, filed Aug. 30, 2012 (Docket # 14) ("Reply").

## II.   LEGAL STANDARD GOVERNING REVIEW OF HABEAS CORPUS PETITIONS BROUGHT PURSUANT TO 28 U.S.C. § 2254

A petition for a writ of habeas corpus may not be granted with respect to any claim that

has been "adjudicated on the merits" in state court unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

For a claim to be "adjudicated on the merits" within the meaning of section 2254(d), it

must "finally resolv[e] the parties' claims, with res judicata effect," and it must be "based on the

substance of the claim advanced, rather than on a procedural, or other, ground."  Sellan v.

Kuhlman, 261 F.3d 303, 311 (2d Cir. 2001) (citations omitted).  As long as "there is nothing in

its decision to indicate that the claims were decided on anything but substantive grounds," a state

court decision will be considered to be "adjudicated on the merits" even if it fails to mention the

federal claim and cites no relevant federal case law.  Aparicio v. Artuz, 269 F.3d 78, 94 (2d Cir.

2001); accord Harrington v. Richter, 131 S. Ct. 770, 784–85 (2011) ("When a federal claim has

been presented to a state court and the state court has denied relief, it may be presumed that the

state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary.") (citation omitted); see also id. at 784 (section 2254(d) deference applies even "[w]here a state court's decision is unaccompanied by an explanation"). Moreover, a state court's "determination of a factual issue" is "presumed to be correct," and that presumption may be rebutted only "by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

A state court decision is "contrary to" clearly established federal law only "if the state court applies a rule that contradicts the governing law set forth" in Supreme Court precedent or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives" at a different result.  Williams v. Taylor, 529 U.S. 362, 405 (2000).  Habeas relief is available under the "unreasonable application" clause only "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case."  Id. at 407, 413.  A federal court may not grant relief "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly."  Id. at 411.  Rather, the state court's application must have been objectively unreasonable — a standard that is met only "where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" Supreme Court precedent. Harrington, 131 S. Ct. at 786; accord id. ("[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable.").  In other words, to demonstrate an "unreasonable" application of Supreme Court law, the habeas petitioner "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  Id. at 786–87.

The "determination of whether a court has unreasonably applied a legal standard depends in large measure on the specificity of the standard in question." Brisco v. Ercole, 565 F.3d 80, 89 (2d Cir.), cert. denied, 130 S. Ct. 739 (2009). "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations" inasmuch as the application of a general standard to a specific case "can demand a substantial element of judgment." Yarborough v. Alvarado, 541 U.S. 652, 664 (2004) (citation omitted); accord Brisco, 565 F.3d at 90 (court applying a "fact-dependent standard . . . . to the facts of a specific case is . . . entitled to significant 'leeway' when [a habeas court] review[s] its decision for reasonableness") (quoting Yarborough, 541 U.S. at 664).

Only holdings of the Supreme Court are considered for purposes of determining "[c]learly established federal law." Rodriguez v. Miller, 537 F.3d 102, 106 (2d Cir. 2008) (citation omitted); accord Marshall v. Rodgers, 133 S. Ct. 1446, 1451 (2013) (a legal principle does not qualify as "clearly established" even if it is "widely accepted among the Federal Circuits that [the legal principle] would, if presented to [the Supreme] Court, be accepted as correct") (citation omitted). Thus, "[n]o principle of constitutional law grounded solely in the holdings of the various courts of appeals or even in the dicta of the Supreme Court can provide the basis for habeas relief." Rodriguez, 537 F.3d at 106–07 (citation omitted). Where there is "[n]o holding" from the Supreme Court on the question presented, Carey v. Musladin, 549 U.S. 70, 77 (2006), or where Supreme Court cases "give no clear answer to the question presented" in the petition, Wright v. Van Patten, 552 U.S. 120, 126 (2008) (per curiam), a state court's decision cannot be contrary to or an unreasonable application of clearly established federal law. See Knowles v. Mirzayance, 556 U.S. 111, 122 (2009) ("[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that

14

has not been squarely established by this Court.") (citations and internal quotation marks omitted).

III.    DISCUSSION

    A.    Exhaustion of Remedies

The respondents argue that Sadagheh failed to exhaust his state remedies.  See Resp. Mem. at 13–15.  Under 28 U.S.C. § 2254(b)(1)(A), "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State."  This means that the petitioner "must fairly present his claim in each appropriate state court (including a state supreme court with powers of discretionary review)."  Baldwin v. Reese, 541 U.S. 27, 29 (2004) (citations and internal quotation marks omitted).  For claims of ineffective assistance of counsel, each factual allegation underlying the claim must have been fairly presented to the state court.  See Caballero v. Keane, 42 F.3d 738, 740–41 (2d Cir. 1994) ("To reach the merits of an ineffective representation claim, all of the allegations must have been presented to the state courts, allowing them the opportunity to consider all the circumstances and cumulative effect of the claims as a whole.") (emphasis in original) (citation, internal quotation marks, and brackets omitted); Nieves v. Artus, 2013 WL 628334, at *2 (E.D.N.Y. Feb. 20, 2013) ("[E]ach factual allegation underlying a claim of ineffective assistance of counsel must first have been fairly presented to a state court.") (citation omitted).

In his motion to vacate, Sadagheh raised the claim that he received ineffective assistance because his attorney failed to inform him of the mandatory period of post-release supervision prior to entering his plea.  See Aug. 5 Aff. ¶¶ 6, 13; Aug. 5 Mem. at 7–12.  He sought leave to appeal the denial of that motion to the Appellate Division, see Leave to Appeal, which was

denied, see Certificate Denying Leave.  Because Sadagheh presented this allegation in a motion

to vacate the judgment and leave to appeal was denied by the Appellate Division, he "invok[ed]

one complete round of the State's established appellate review process," O'Sullivan v. Boerckel,

526 U.S. 838, 845 (1999), and thus exhausted his state law remedies on this claim, see, e.g.,

Reyes v. Phillips, 2005 WL 2173812, at *4 (S.D.N.Y. Sept. 6, 2005) ("[I]n order to properly

exhaust claims raised in an unsuccessful § 440.10 motion, a habeas petitioner must seek leave to

appeal the denial of the motion to the Appellate Division.") (citation omitted).[1]

By contrast, the claim that counsel neglected to inform Sadagheh of his "right" to

withdraw his plea was not raised in Sadagheh's motions to withdraw the plea or in the motion to

vacate the judgment.  Indeed, he has never raised it in the state courts.  Because this allegation

presents a distinct basis for ineffective assistance, Sadagheh has failed to exhaust this claim.

See Rowe v. New York, 2002 WL 100633, at *2 (S.D.N.Y. Jan. 25, 2002) (finding unexhausted

"new allegations of ineffective assistance [which] present facts and legal theories that have not

been presented to the state courts").

For petitions containing both exhausted and unexhausted claims — commonly referred to

as "mixed petitions" — the court has discretion to either dismiss the case or to stay proceedings

to permit the petitioner to present the unexhausted claims in state court.  Rhines v. Weber, 544

U.S. 269, 277–78 (2005).  Sadagheh has not asked for a stay, however.  In the absence of a stay,

a mixed petition such as this one must be dismissed in its entirety.  See, e.g., Zarvela v. Artuz,

254 F.3d 374, 381 (2d Cir.), cert. denied, 534 U.S. 1015 (2001).

_____

[1]  Because Sadagheh raised the issue at all available levels of review, we reject
respondents' contention, see Resp. Mem. at 14–15, that the claim may be unexhausted because
Sadagheh did not purse the appeal of his conviction.

Accordingly, the Court will assume that Sadagheh intended to make a request for a stay. A court may not, however, stay the proceedings where there is no "good cause for the petitioner's failure to exhaust his claims first in state court" or the unexhausted claims are "plainly meritless."  Rhines, 544 U.S. at 277 (citing 28 U.S.C. § 2254(b)(2)); accord Jimenez v. Graham, 2011 WL 6287999, at *3 (S.D.N.Y. Dec. 14, 2011); Muir v. New York, 2010 WL 2144250, at *6 (S.D.N.Y. May 26, 2010); Bennett v. Conway, 2010 WL 1608222, at *4 (E.D.N.Y. Apr. 19, 2010).  Here, there has been no showing of "good cause" for the failure to raise the claim in state court.  But since the unexhausted claim is plainly meritless, it is not necessary to reach this ground either.

Accordingly, the Court will address both claims on the merits.  See 28 U.S.C. § 2254(b)(2).

B.     Merits

1.     Law Governing Ineffective Assistance of Counsel

"In order to prove ineffective assistance, [a petitioner] must show (1) 'that counsel's representation fell below an objective standard of reasonableness'; and (2) 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'"  Pham v. United States, 317 F.3d 178, 182 (2d Cir. 2003) (quoting Strickland v. Washington, 466 U.S. 668, 688, 694 (1984)); accord United States v. Brown, 623 F.3d 104, 112 (2d Cir. 2010); see also Massaro v. United States, 538 U.S. 500, 505 (2003) ("[A] defendant claiming ineffective counsel must show that counsel's actions were not supported by a reasonable strategy and that the error was prejudicial.").  In evaluating the first prong — whether counsel's performance fell below an objective standard of reasonableness — "'[j]udicial scrutiny . . . must be highly deferential,'" and the petitioner "must overcome the 'presumption

17

that, under the circumstances, the challenged action might be considered sound trial strategy.'"

Bell v. Cone, 535 U.S. 685, 698 (2002) (alteration in original) (quoting Strickland, 466 U.S. at

689); see Dunham v. Travis, 313 F.3d 724, 730 (2d Cir. 2002) (according counsel a presumption

of competence).  In performing this analysis, a court must "affirmatively entertain the range of

possible reasons [petitioner]'s counsel may have had for proceeding as they did." Cullen v.

Pinholster, 131 S. Ct. 1388, 1407 (2011) (citation and internal quotation marks omitted).

 To satisfy the prejudice requirement, the petitioner "must show that there is a reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding would have

been different.  A reasonable probability is a probability sufficient to undermine confidence in

the outcome."  Strickland, 466 U.S. at 694; accord Lynn v. Bliden, 443 F.3d 238, 247–48 (2d

Cir. 2006), cert. denied, 549 U.S. 1257 (2007).  With respect to the second prong, the Second

Circuit generally "requires some objective evidence other than defendant's assertions to establish

prejudice."  Pham, 317 F.3d at 182 (citing United States v. Gordon, 156 F.3d 376, 380–81 (2d

Cir. 1998) (per curiam)).  Courts evaluating a claim of ineffective assistance of counsel need not

address both prongs of the analysis.  See Strickland, 466 U.S. at 697 ("[T]here is no reason for a

court deciding an ineffective assistance claim to approach the inquiry in the same order or even

to address both components of the inquiry if the defendant makes an insufficient showing on

one.").

 When a petitioner seeks relief on the basis of ineffective assistance of counsel with

respect to a guilty plea, the petitioner must show that "'a reasonable probability [exists] that, but

for counsel's errors, he would not have pleaded guilty and would have insisted on going to

trial.'"  Premo v. Moore, 131 S. Ct. 733, 743 (2011) (quoting Hill v. Lockhart, 474 U.S. 52, 59

(1985)).  A petitioner who has pled guilty "must [also] convince the court that a decision to

reject the plea bargain would have been rational under the circumstances." Padilla v. Kentucky, 130 S. Ct. 1473, 1485 (2010).  As one case has noted, "[t]his inquiry requires a fact-specific analysis that evaluates the weight of the evidence, the consequences of various legal options, and any circumstances that may affect a decision to plea[d]." Matos v. United States, 2012 WL 569360, at *3 (S.D.N.Y. Feb. 16, 2012).

2.    Alleged Failure by Counsel to Inform Sadagheh of Post-Release
Supervision

Sadagheh argues that he was denied effective assistance because his counsel did not "inform[] [him] of the issue of post-release supervision prior to entering a plea of guilty." Pet. Mem. at 10.  As a general matter, "it is the responsibility of defense counsel to inform a defendant of the advantages and disadvantages of a plea agreement and the attendant statutory and constitutional rights that a guilty plea would forgo." Libretti v. United States, 516 U.S. 29, 50–51 (1995); accord Purdy v. United States, 208 F.3d 41, 44–45 (2d Cir. 2000) ("[D]efense counsel must give the client the benefit of counsel's professional advice on th[e] crucial decision of whether to plead guilty.") (citations and internal quotation marks omitted).

The question of whether the Supreme Court has clearly established a right to be counseled in advance of a plea as to the existence of post-release supervision, however, raises a different issue altogether.  But it is not necessary to decide the question of whether there is such a right clearly established in case law because Sadagheh's claim would fail regardless.  The only evidence that Sadagheh offered the state court on the question of his interactions with his attorney is a single conclusory self-serving statement in an affidavit submitted as part of the

19

motion to vacate the judgment.  See Aug. 5 Aff. ¶ 6.[2]  "In considering an ineffective counsel claim arising out of a petitioner's decision to plead guilty, a court need not accept a petitioner's uncorroborated, self-serving testimony as true."  Grullon v. United States, 2004 WL 1900340, at *6 (S.D.N.Y. Aug. 24, 2004) (citing cases), reh'g denied, 2005 WL 1560479 (S.D.N.Y. June 28, 2005).  And the only objective evidence in the record reflects that Sadagheh's counsel in fact informed him of the post-release supervision prior to entering the guilty plea.

The trial judge initially did not discuss post-release supervision during the initial plea colloquy but addressed it after he was reminded by a court clerk.  See Tr. 22:14–17.  When the judge stated that a guilty plea would include a period of post-release supervision, Sadagheh's counsel replied, "I've explained it to my client."  Tr. 23:16–17.  Then, after stating that the term of post-release supervision could be between five and 20 years but that Sadagheh's term would be limited to 10 years, Justice Farber asked whether Sadagheh understood.  Tr. 23:19–24:1.  Sadagheh responded, "I understand."  Tr. 24:2.  Justice Farber then asked whether the term of post-release supervision was acceptable, to which defendant responded, "Yes, acceptable."  Tr. 24:6–7.  Sadagheh never contended that his counsel failed to inform him of the post-release supervision until he filed his motion to vacate almost a year later.  See Aug. 5 Aff. ¶¶ 6–13.

---

[2]  The statement is "The defendant was never informed by his attorney, the Court nor the prosecutor that as a result of pleading guilty he would be exposed to any period of Post-Release Supervision."  Of course, Sagadeh's statement as to "the Court" is demonstrably false inasmuch as the transcript of the allocution reflects that Justice Farber specifically referenced and inquired about the post-release supervision.

We note that because habeas corpus review under 28 U.S.C. § 2254(d) is limited to the record before the state court, see Pinholster, 131 S. Ct. at 1398, the Court does not consider the similar conclusory statement contained in Sadagheh's January 9, 2012 affidavit filed in conjunction with this case, see Affidavit of Torkieh Sadagheh, dated Jan. 9, 2012 (annexed as Ex. 3 to Pet.) ("Jan. 9 Aff."), ¶¶ 5–7.

20

The Supreme Court has cautioned that "the representations of the defendant, his lawyer, and the prosecutor [during plea allocutions] . . . constitute a formidable barrier in any subsequent collateral proceedings.  Solemn declarations in open court carry a strong presumption of verity." Blackledge v. Allison, 431 U.S. 63, 73–74 (1977) (emphasis added).  Therefore, Sadagheh has provided insufficient evidence to show counsel's deficient performance.  See, e.g., Larweth v. Conway, 493 F. Supp. 2d 662, 670–71 (W.D.N.Y. 2007) (petitioner's self-serving statements that counsel had failed to inform him of a term of post-release supervision prior to entering a guilty plea, which were contradicted by statements made during a plea allocution, were insufficient to prove ineffective assistance).

There is a separate ground for denial of this claim.  Even if counsel had failed to inform Sadagheh about the post-release supervision, the petition would still have to be denied because Sadagheh's evidence of prejudice suffers from the same defect.  The only proof concerning whether he would have pled guilty had he known of the period of post-release supervision in the motion to vacate at the trial level is an unsworn statement in a memorandum of law.  See Aug. 5 Mem. at 11.  The trial court cannot be faulted for failing to rule in plaintiff's favor on the motion to vacate when there was no competent evidence on the one factual point that was critical to his request for relief.  Moreover, the sworn statements contained in the affidavit submitted with the application for leave to appeal the denial of the motion to vacate, see Sept. 10 Aff. ¶ 7, and the affidavit submitted with the current habeas petition, see Jan. 9 Aff. ¶ 8, are conclusory and completely self-serving.  The Second Circuit has made clear that a habeas petitioner must present "objective evidence" beyond the "defendant's self-serving, post-conviction" statements to prove prejudice in the plea context.  United States v. Gordon, 156 F.3d 376, 380–81 (2d Cir. 1998) (citing Boria v. Keane, 99 F.3d 492, 497 (2d Cir. 1996)); accord Potter v. Green, 2009 WL

21

2242342, at *15 (E.D.N.Y. July 24, 2009) ("Petitioner's only evidence showing that 'but for' counsel's [failure to inform him of post-release supervision], Petitioner would not have pled guilty is Petitioner's [self-serving statement]; however this statement alone is insufficient.").

In addition, there is strong — indeed, virtually conclusive — objective evidence that the knowledge of the post-release supervision term would not have had the slightest impact on Sadagheh's decision to plead guilty.  Sadagheh is a non–citizen.  Tr. 19:16–18.  Any noncitizen "who is convicted of an aggravated felony at any time after admission is deportable."  8 U.S.C. § 1227(a)(2)(A)(iii).  A rape conviction constitutes an aggravated felony.  Id. § 1101(a)(43)(A). Thus, Sadagheh's plea meant "automatic, unavoidable deportation."  United States v. Couto, 311 F.3d 179, 184 (2d Cir. 2002); accord Moncrieffe v. Holder,  2013 WL 1729220, at * 3 (U.S. April 1, 2013) ("if a noncitizen has been convicted of [an aggravated felony], then he is not only deportable, . . . but also ineligible for . . . discretionary forms of relief [from deportation]") (citations omitted); Couto, 311 F.3d at 189–90 ("An alien convicted of an aggravated felony is automatically subject to removal and no one — not the judge, the INS, nor even the United States Attorney General — has any discretion to stop the deportation."); Nunez v. Conway, 2010 WL 234826, at *12 (S.D.N.Y. Jan. 20, 2010) ("[A]n alien convicted of an aggravated felony . . . is automatically subject to removal upon the termination of his sentence . . . ."); Eisa v. Immigration & Customs Enforcement, 2008 WL 4223618, at *8 (S.D.N.Y. Sept. 11, 2008) (after 1996, "deportation of aggravated felons became automatic and nondiscretionary").  In light of this fact, the term of post-release supervision will have no practical consequence at all because once Sadagheh is deported, he will be outside the jurisdiction of New York State probation department.  Thus, whether or not a post-release supervision term was included in Sagadeh's sentence could not have had even the slightest effect on his decision to plead guilty.

22

In sum, the trial court's denial of Sadagheh's ineffective assistance claim as to this ground was neither an unreasonable application of clearly established federal law nor was it based on an unreasonable determination of the facts in light of the evidence presented.  See 28 U.S.C. § 2254(d).

       3.    <u>Alleged Failure by Counsel to Inform Sadagheh of His Right to Withdraw His Guilty Plea</u>

Sadagheh argues that Fried's "failure to inform [him] of his right to withdraw his guilty plea" constituted ineffective assistance of counsel.  Pet. ¶ 23.  This claim receives little explanation in Sadagheh's petition or briefs but it appears to be premised on the notion that he had a "right" to withdraw his guilty plea because the guilty plea was itself infirm under New York Sate law.  See People v. Catu, 4 N.Y.3d 242, 245 (2005) (defendant must be informed of the post-release supervision component of sentence in order for plea of guilty to be knowing, voluntary, and intelligent).[3]  Given that Sadagheh was actually informed of the post-release supervision component during the plea allocution, however, a reasonable attorney might have thought that such a motion would be extremely unlikely to succeed.  State law requires only that a defendant "must be aware" of the post-supervision release term, Catu, 4 N.Y.3d at 245, which certainly occurred here as Sadagheh explicitly agreed to the condition during the plea hearing, Tr. 24:7.  Petitioner's argument seems to rest on the contention that Sadagheh was informed

---

[3]  Petitioner appears at one point in his reply brief to make a claim that the trial judge's plea allocution "constitutes a Catu" error, and that this claim should itself be adjudicated as a freestanding claim in this habeas petition.  See Reply at 1, 6.  Any such claim must be rejected, however, because it was made for the first time in a reply brief.  More importantly, it would fail on the merits as "there is no clearly established Supreme Court precedent that requires a state court judge to advise a defendant of mandatory PRS before accepting a guilty plea."  Redcross v. Keller, 2010 WL 3219320, at *5 (S.D.N.Y. Aug. 12, 2010) (citations and internal quotation marks omitted) (citing cases).

about the condition after the clerk asked him whether he was pleading guilty to the crimes charged in the indictment and after the judge told him he could not change his mind or withdraw the plea.  Tr. 21:3–18.  But, under New York law, a judge "is not obligated to engage in any particular litany during the plea colloquy . . . ."  People v. Belliard, 2013 WL 499504, at *2 (N.Y. Feb. 12, 2013).  Thus, counsel could have reasonably assumed that there was no basis to withdraw the plea.  Certainly, we cannot say that it is "clearly established" under federal law that an attorney in the position of Sadagheh's attorney should have counseled Sadagheh to make a motion to withdraw.  An attorney cannot be faulted for failing to advise a client to make a motion that itself has no basis.  See Lucero v. Kerby, 7 F.3d 1520, 1522 (10th Cir. 1993) (finding no ineffective assistance of counsel because "trial counsel had no basis upon which to advise petitioner to withdraw his plea").

In any case, Sadagheh does not even allege that he communicated to Fried his desire to withdraw the plea.  Thus, counsel would have no reason to advise Sadagheh that he had a means to withdraw it, even if such means were available.

Finally, this claim must be rejected on yet another basis: the lack of prejudice.  Where a petitioner claims ineffective assistance based on counsel's failure to advise a defendant to seek certain relief, the prejudice inquiry turns on whether making application for such relief would have altered the outcome.  See, e.g., Hill, 474 U.S. at 59 ("[W]here the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the 'prejudice' inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial.").  Here, there is certainty that the outcome would have been the same even if Fried had informed Sadagheh that he could move to withdraw his plea. This is because Sagadeh actually filed the motion that he accuses Fried of failing to advise him

24

to file.  See Aug. 5 Aff. ¶¶ 6–13; Aug. 5 Mem. at 7–12.  The Court denied this motion, finding it

to be "entirely without merit."  Aug. 27 Order.  Given that Sadagheh filed this motion and the

court denied it, there was no "reasonable probability that, but for" Fried's failure to inform

Sadagheh about the possibility of withdrawing his plea, "the result of the proceeding would have

been different."  Strickland, 466 U.S. at 694; accord Simpson v. Quarterman, 2010 WL 2522206,

at *13 (W.D. Tex. June 17, 2010) (no prejudice where court considered and rejected defendant's

contentions on the merits despite attorney's deficient performance).  Accordingly, because

Sadagheh cannot show prejudice from Fried's alleged failure to advise him about the possibility

of withdrawing the guilty plea, this claim is plainly meritless for this reason as well.[4]

IV.    CONCLUSION

For the foregoing reasons, Sadagheh's petition should be denied in its entirety.

## PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil

Procedure, the parties have fourteen (14) days including weekends and holidays from service of

this Report and Recommendation to serve and file any objections.  See also Fed. R. Civ. P. 6(a),

(b), (d).  Such objections (and any responses to objections) shall be filed with the Clerk of the

---

[4]  Sadagheh further requests that he be able to utilize discovery procedures and that the Court conduct an evidentiary hearing.  Pet. at 6.  He provides no explanation, however, of what materials he seeks in discovery or why such materials would support his claim.  As for the request for an evidentiary hearing, he does not explain why his claims fit into the categories enumerated in 28 U.S.C. § 2254(e)(2) for such a hearing.  Moreover, this Court's analysis of the petition rests upon determinations under 28 U.S.C. § 2254(d), which means it may consider only the evidentiary record in the state proceedings.  See Pinholster, 131 S. Ct. at 1398; Assadourian v. Brown, 493 F. App'x 223, 225 n.1 (2d Cir. 2012) ("district court erred in holding an evidentiary hearing" because "review under § 2254(d) is to be limited to the record before the state court") (citing Pinholster, 131 S. Ct. at 1398).

Court, with copies sent to the Hon. Laura T. Swain, and to the undersigned, at 500 Pearl Street, New York, New York 10007.  Any request for an extension of time to file objections must be directed to Judge Swain.  If a party fails to file timely objections, that party will not be permitted to raise any objections to this Report and Recommendation on appeal.  See Thomas v. Arn, 474 U.S. 140 (1985); Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C., 596 F.3d 84, 92 (2d Cir. 2010).


Dated:  April 29, 2013
          New York, New York

GABRIEL W. GORENSTEIN
United States Magistrate Judge

26